MICHAEL BRODIE, Employee, Plaintiff,
v.
EXCEL STAFFING SERVICES, Employer, and
AMERICAN ZURICH INSURANCE COMPANY, Carrier, Defendants.
No. COA09-754.
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
Doran, Shelby, Pethel & Hudson, P.A., by David A. Shelby, for plaintiff-appellant.
Wickham & Chambliss, P.L.L.C., by Joseph B. Chambliss, Jr., for defendant-appellant.
Womble, Carlyle, Sandridge & Rice, P.L.L.C., by Philip J. Mohr, for defendant-appellee.
BRYANT, Judge.
Following a hearing in September 2006 and February 2007, the deputy commissioner issued an opinion and award on 26 February 2008. Defendant-carrier American Zurich Insurance Company appealed to the Full Commission, which filed its opinion and award on 3 December 2008. Employee Michael Brodie and employer Excel Staffing Services appeal. Carrier cross-appeals and moves for dismissal of employee's appeal. As discussed herein, we deny carrier's motion and remand to the Commission.

Facts
At the time of the hearing, employee was forty-three years old. Between 23 February 2004 and 15 April 2005, employee worked as a drywall hanger and finisher on a project at the Veterans Administration Hospital in Salisbury on behalf of employer Excel Staffing. After beginning this project, employee began suffering pain in his right elbow and arm. Employee compensated by using his left arm instead. After reporting his symptoms to his supervisor and Excel's CEO, employee sought medical care from his primary care physician, Dr. Ronnie Barrier, on 9 March 2004. Employee continued working and saw Dr. Barrier again on 7 May, 7 June and 14 July 2004 with right arm and elbow pain. In July 2004, employee completed an accident report listing 9 March 2004 as the date of the injury.
On 29 July 2004, employer returned to Dr. Barrier, who wrote him out of work from 2 August to 15 August 2004. On 9 August 2004, employer denied coverage by Form 61. On 10 August 2004, Dr. Barrier referred employee to an orthopedic surgeon, Dr. Jeffery Baker. Employee returned to work after 15 August and presented to Dr. Baker on 13 September 2004. Dr. Baker administered an injection to the elbow and employee returned to work. On 17 November 2004, employee filed a Form 33 seeking payment of medical expenses and treatment and payment for permanent partial disability. Employee continued working for employer until completion of the VA Hospital project on 15 April 2005.
Employee and employer made five assignments of error which they bring forward in two arguments to this Court: the Commission erred in (I) listing the wrong coverage start date for carrier's policy in North Carolina in finding 46 and (II) failing to make findings concerning whether employee's compensable occupational disease was augmented by his work after the start date of carrier's coverage. Carrier cross-assigns error to the Commission's conclusion 1: (III) that employee's work as a drywall hanger placed him at an increased risk of developing bilateral epicondylitis than the general public. Because we remand for correction of the error discussed in (I), we do not address arguments (II) or (III). In addition, we deny carrier's motion to dismiss employee's appeal.

Carrier's Motion to Dismiss Employee's Appeal
Carrier moves to dismiss employee's appeal, contending that he is not a party aggrieved under N.C. Gen. Stat. § 1-271 (2009). We disagree.
"A `party aggrieved' is one whose legal rights have been denied or directly and injuriously affected by the action of the trial court." Selective Ins. Co. v. Mid-Carolina Insulation Co., 126 N.C. App. 217, 219, 484 S.E.2d 443, 445 (1997). Carrier contends that, because employee obtained the Commission's determination that he suffered from a compensable occupational disease and an award of the benefits he sought, he was not a party aggrieved. As discussed below, the Commission's error in finding 46 requires remand for correction and may require additional changes or corrections in the opinion and award. Thus, as to the only issue we address in this appeal, employee was a party aggrieved. Therefore, we deny carrier's motion to dismiss.

I
Employee and employer first contend the Commission listed the wrong start date for carrier's coverage of employer's North Carolina employees in finding 46. We agree.
Defendant-carrier acknowledges that the Commission's opinion and award contains a scrivener's error. The opinion and award correctly states that the parties made the following stipulation: "3. American Zurich contends Excel Staffing was insured for North Carolina employees only after September 25, 2004." However, in finding 46, the Commission stated, in pertinent part: "The record shows that, although Excel had coverage through Zurich for its Virginia employees, Excel never obtained a policy from Zurich providing coverage in North Carolina until September 24, 2005." The correct date was the one stipulated to, as reflected in the briefs from all parties as well as employer's exhibit 6 to the Commission, a document from carrier listing the effective policy change date adding North Carolina employees as "9-25-04".
Finding 46 goes on to state: "The Full Commission finds that plaintiff's [bi]lateral epicondylitis was contracted prior to the date that Zurich [carrier] was on the risk in North Carolina and, thus, Zurich is not liable." Findings 47-49 state:
47. Dr. Lauffenburger was of the opinion to a reasonable degree of medical certainty that Plaintiff's work at Excel Staffing from February 23, 2004 to April 15, 2005 placed him at an increased risk for the development of bilateral epicondylitis in his arms.
48. Further, Dr. Lauffenburger was of the opinion to a reasonable degree of medical certainty that the job activities at Excel were a significant contributing factor to Plaintiff's development of bilateral epicondylitis.
49. Dr. Lauffenburger also believed that the jobs performed by plaintiff after April 15, 2005 would certainly not augment bilateral epicondylitis if they were supervisory and light in nature. The greater weight of the evidence establishes that Plaintiff was last injuriously exposed to the hazards of his occupational disease during his employment with Excel Staffing.
This language tracks the following portion of N.C. Gen. Stat. § 97-57:
In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable.
N.C.G.S. § 97-57 (2009); see also Rutledge v. Tultex Corp., 308 N.C. 85, 88-9, 301 S.E.2d 359, 362 (1983). The Commission's opinion and award specifies 15 April 2005 as the date before which employee's work placed him at increased risk for his compensable occupational disease and after which his employment did not augment same. This date is prior to the erroneous coverage start date listed in finding 46. The correct coverage start date would fall during the period in which Dr. Lauffenburger opined employee's work increased his risk for development of his compensable occupational disease, as discussed in finding 47.
Based on our careful review of the record in this matter and on the language in the Commission's opinion and award, we are unable to determine whether the coverage start date error in finding 46 was a mere clerical error on the Commission's part, or whether it may have impacted the Commission's analysis, other findings or conclusions. Therefore, we remand to the Commission for correction of the start date of carrier's coverage for employer's North Carolina employees in finding 46. The Commission shall review the remaining findings and conclusions in its opinion and award in light of this correction and make any additional corrections or findings as necessary. Because this correction may necessitate additional changes or further findings by the Commission, we do not address arguments (II) or (III).
Remanded for further proceedings as described herein.
Judges ELMORE and STROUD concur.
Report per Rule 30(e).